IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARIN E. SOLLMAN, Individually and as Administratrix of the Estate of Jesse Sollman | : : : CIVIL ACTION : |
| v. | : No. 07-1183 : |
| OFFICER MATTHEW RENNINGER et al. | : : |

## MEMORANDUM AND ORDER

**Juan R. Sánchez, J.**                                                                 **December 4, 2008**

The City of Easton, its officials, and individual police officers ask this Court to dismiss a suit brought by Carin E. Sollman, Officer Jesse E. Sollman's widow, on grounds an accidental death is not a deprivation of a known civil right. Sollman argues the City and the individual defendants violated Sollman's Fourth and Fourteenth Amendment rights. I will grant some of the individual officers' Motions to Dismiss because I find no Fourth Amendment violation, but will deny Officer Matthew Renninger's Motion to Dismiss. I will also deny the City's Motion to Dismiss because I find sufficient facts pled to support a claim under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).

**FACTS**[1]

Jesse E. Stollman was a police officer in Easton and a member of its Special Weapons and

---

[1] When I consider a Motion to Dismiss, I accept all allegations in, and reasonable inferences from, the Complaint as true and view them in the light most favorable to the plaintiff. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). I also have before me Defendants' Motion to Strike Impertinent, Immaterial, and Scandalous Material in the Complaint under Federal Rule of Civil Procedure 12(f). I find the allegations contained in Paragraphs 34 and 46 through 57 are immaterial to the Complaint and will be stricken. When I accept the well-pleaded facts of the Complaint, I omit the paragraphs which I will strike.

1

Tactical Unit (SWAT). On Friday, March 25, 2005, the SWAT team attended a day-long training exercise. When they returned, the officers unloaded their weapons in a second floor armory to clean the weapons in an adjacent seven- by ten-foot cleaning room.[2] Officers Sollman, Renninger, and Robert Weber were in the cleaning room, cleaning firearms. Renninger left the cleaning room and re-loaded his H&K 40-caliber semi-automatic firearm in the locker room. He noticed a spot on the weapon and carried his loaded weapon, with the safety mechanism switched off, into the cleaning room. Renninger switched on the safety mechanism, cleaned the spot, released the safety mechanism, and turned to leave the room. As he did so, the gun discharged less than three inches from Sollman's back. The bullet killed Sollman instantly, piercing his spleen, liver, and aorta.

A grand jury empaneled to investigate the death concluded:

> Sollman's death was the result of the cumulative effect of the following: the deficiency of the firearm safety facilities; the absence of appropriate firearm safety standards; the failure of the Easton Police Department command structure to establish and enforce safety standards and procedures; and, the series of negligent actions by Officer Renninger.

Pl.'s Compl. ¶ 33.

Sollman's Complaint documents other careless incidents involving weapons, including an incident one week before the Sollman shooting death where Renninger left a loaded weapon on the trunk of a car in a public parking area. Sollman has sued all Defendants under 42 U.S.C. § 1983 alleging substantive due process violations, supervisor liability, and a *Monell* claim against the City. Plaintiff also brings several state tort counts.

Defendants have filed four motions under Federal Rule of Civil Procedure 12. Officer

---

[2]There was no safety barrel in the cleaning room. There may have been a safety barrel in the armory room, but no one routinely used the barrel when loading or unloading his weapon.

Renninger asks this Court to find qualified immunity and dismiss the Complaint against him on grounds there is no constitutional violation which would give rise to liability under the Fourth Amendment and no action which would shock the conscience of the court to create Fourteenth Amendment liability. The City Defendants, former Mayor Phillip Mitman, his chief of staff Stuart Gallagher, and the City, ask this Court to dismiss the Complaint on grounds there is no municipal liability under § 1983 because no facts support a failure to train or state-created danger theory of liability under the Fourteenth Amendment. The City Defendants also join in Renninger's demand for qualified immunity on grounds there is no underlying constitutional deprivation. The City Defendants move to strike, under Rule 12(f), scandalous, impertinent, or immaterial allegations from the Complaint. Former Chief Steven Mazzeo, Officers Timothy Lambert (now deceased), and Robert Weber ask this Court to find they are entitled to qualified immunity because there was no constitutional violation. In the final motion, former Lt. John Mazzeo argues he left the department before the Sollman shooting and could not be a state actor for § 1983 purposes.

**DISCUSSION**

When I consider a motion to dismiss under Rule 12(b)(6), I must ascertain whether the Complaint contains the short and plain statement required by Rule 8(a), "showing that the pleader is entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). A complaint must include "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the essential elements. *Phillips*, 515 F.3d at 234 (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

All Defendants ask this Court to find they have qualified immunity. Qualified immunity is intended to shield government officials performing discretionary functions, including police officers,

3

"from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant must establish he is entitled to qualified immunity. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 512 (emphasis in original). As a result, the Supreme Court stresses "the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) *(per curiam)*.

A qualified immunity analysis involves two steps. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). First, the court must ask whether "the facts alleged show the officer's conduct violated a constitutional right." *Id.* "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002). If a plaintiff alleges a constitutional violation, "the next, sequential step" is to resolve the qualified immunity claim by asking "whether the right was clearly established." *Saucier*, 533 U.S. at 201.

Sollman must first show a constitutional violation to move forward with her § 1983 claim. Sollman alleges three constitutional violations: an unlawful seizure under the Fourth Amendment and two claims under the Fourteenth Amendment. A seizure under the Fourth Amendment requires "an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). An element of willfulness "is implicit in the word 'seizure,' which can hardly be applied to an

4

unknowing act." *Id.* In *Brower*, the Court stated a "seizure occurs even when an unintended person or thing is the object of the detention or taking. . . . [T]he detention or taking itself must be willful." *Id.* A seizure occurs when an officer "terminates or restrains [a person's] freedom of movement, through means intentionally applied." *Brendlin v. California*, 127 S. Ct. 2400, 2405 (2007) (citations and internal punctuation omitted).[3] A judge can evaluate objective reasonableness only when relevant factual issues are no longer in dispute. *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002) (suggesting special jury interrogatories "to permit the jury to resolve the disputed facts upon which the court can then determine, as a matter of law, the ultimate question of qualified immunity").

In this case, the degree of intentionality in Renninger's conduct is factually unsettled. Renninger entered a gun cleaning room with a loaded weapon. He removed the safety from his weapon in the gun cleaning room. If the fatal bullet traveled from Sollman's spleen through his liver to his aorta as alleged, then the bullet was traveling upward, which raises a factual question about the angle at which Renninger was holding his weapon.

Renninger argues he was not acting under color of state law. "[S]tate employment is generally sufficient to render the defendant a state actor," however, "not all torts committed by state employees constitute state action, even if committed while on duty." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 24 (3d Cir. 1997) (internal quotation marks omitted) (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988)). "[T]he essence of § 1983's color of law requirement is that the alleged offender,

---

[3] The case before me is not an unreasonable force case. As the Supreme Court recognized in *Tennessee v. Garner*, 471 U.S. 1, 7 (1985), "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." In this case, the question is whether the seizure, *i.e.*, the shooting death itself, was unreasonable.

5

in committing the act complained of, abused a power or position granted by the state." *Id.* Renninger argues a First Circuit case, *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995), holds when one officer shoots another, the shooter is not acting "under color of state law." In *Martinez*, the court found no bystander liability for failing to intervene when one police officer maimed another during horseplay. *Id.* at 990. The *Martinez* court did not decide whether the shooter was constitutionally liable. In *dicta*, the court stated, "we are of the view that the context in which a service revolver is used, not just the mere fact of its use, must be consulted to determine the constitutional relevance of the officer's conduct." *Id.* at 987-88. In this case, when Renninger shot Sollman, Renninger had yet to complete his shift and was using police equipment to service his weapon in the cleaning room located within police headquarters. A determination of whether Renninger was acting under color of state law involves an evaluation of context, a factual question that cannot be decided at this stage of the proceedings. For that reason, I will deny Renninger's Motion to Dismiss.

The City of Easton also moves to dismiss on behalf of itself and Mayor Mitman and Chief of Staff Gallagher, both individually and as former city officials. The City argues it cannot be held liable under *Monell* without an underlying constitutional violation, citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

When an officer violates a plaintiff's rights that are not "clearly established," but a city's policy was the "moving force" behind the constitutional violation, the municipality may be liable even though the individual officer is immune. *See Fagan v. City of Vineland*, 22 F.3d 1283, 1294 (3d Cir.1994) (holding "a municipality can be liable under § 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no

6

individual officer participating in the chase violated the Constitution"); *see also Barber v. City of Salem*, 953 F.2d 232, 238 (6th Cir. 1992) (holding "it is possible that city officials may be entitled to qualified immunity for certain actions while the municipality may nevertheless be held liable for the same actions").

This Court must review claims of municipal liability "independently of the § 1983 claims against the individual police officers." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). Municipality liability under § 1983 arises "where action pursuant to a municipal policy or custom causes a constitutional tort." *Fagan*, 22 F.3d at 1291. There is no *respondeat superior* liability under § 1983; a municipality cannot be held liable solely because it employs a tortfeasor. *Id.* But the municipality remains liable when injury is inflicted under a government policy or custom. *Id.*

Sollman bases her first Fourteenth Amendment claim against the City on a failure to train and its customs and practices regarding weapon handling. A municipality "can only be liable when the alleged Constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

The City argues Sollman must prove deliberate indifference to prevail on a failure to train theory, citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), in which the Supreme Court held "that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of person with whom the police come into contact." The Third Circuit uses a three-part test to determine whether municipality acts with deliberate indifference: "(1) municipal policy makers know that employees will confront a particular

situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *Walker v. City of N.Y.*, 974 F.2d 293, 298 (2d Cir. 1992)). Identifying a municipal policy or custom amounting to deliberate indifference "typically requires proof of a pattern of underlying constitutional violations." *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Proving deliberate indifference in the absence of such a pattern is a difficult task, "although it is possible." *Carswell*, 381 F.3d at 245. There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (citation omitted).

Sollman alleges prior firearm safety incidents – a firearm discharge within the armory in 2001, and an incident involving Defendant Renninger one week before Sollman's shooting death. Under *Monell* and its progeny, municipal liability will attach only where a plaintiff establishes that an official policy or custom served as a proximate cause of the asserted constitutional deprivation. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). Municipal liability for an unofficial custom will attach when, though not authorized by law, the challenged practices are "so permanent and well-settled" as to be tantamount to law. *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). A pervasive custom can be established by evidence the authorities knew of and acquiesced to the challenged practice. *See Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989). The degree to which the City's custom and practices pervade police handling of firearms is a factual question which I cannot resolve at this stage of the proceedings.

Sollman also alleges a substantive Due Process claim under the "state-created danger" doctrine, under which government actors violate the Due Process Clause "when, acting in an

8

egregious manner that shocks the conscience, they create an opportunity for harm to befall a plaintiff with which they have some sort of relationship and foreseeable, direct harm does occur." *Schieber v. City of Phila.*, 320 F.3d 409, 416-17 (3d Cir. 2003). The state-created danger is an exception to the rule "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 196 (1989). The Third Circuit identifies four "essential elements of a meritorious 'state-created danger' claim":

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006), *cert. denied*, 127 S. Ct. 1483 (2007). If "genuine issues of material fact exist as to each of these four elements," Sollman's case will survive the qualified immunity claim. *Walter v. Pike County*, 544 F.3d 182, 192 (3d Cir. 2008).

The "exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case," *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999), and depends in particular on "the extent to which a state actor is required to act under pressure." *Sanford v. Stiles*, 456 F.3d 298, 301 (3d Cir. 2006). In "hyperpressurized" circumstances where split- second decisions are required – a high speed car chase, for example – an intent to cause harm may be required for a state actor's conduct to shock the conscience. *Sanford*, 456 F.3d at 308. When the state actor had ample time for deliberation before engaging in the allegedly

9

unconstitutional conduct, the appropriate standard is deliberate indifference. *Phillips*, 515 F.3d at 240 (noting where state officials have sufficient time to make unhurried judgments "deliberate indifference is sufficient to support an allegation of culpability"). An intermediate gross negligence or arbitrariness standard, applies where the state actor has more than a "split-second" to make a decision, but less than enough time to make an "unhurried judgment." *Sanford*, 456 F.3d at 306.

At this early stage of the proceedings, I cannot decide as a matter of law the harm which befell Sollman was not foreseeable; the policies of the City are not so lax as to shock the conscience of the Court; Sollman was not a foreseeable victim; and the City's policies regarding handling of firearms. For that reason I will deny the City's Motion to Dismiss.

The Motions to Dismiss of Defendants Lambert, the now deceased SWAT commander, and Steven Mazzeo, former chief of police, present a slightly different factual picture. Sollman's allegations against Lambert and Mazzeo are premised on a failure to supervise or train. To prove supervisory liability, Sollman must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. . . . [I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did.

*Brown*, 269 F.3d at 216 (3d Cir. 2001) (citation omitted). Sollman has not identified specific acts or omissions attributable to Lambert or Mazzeo sufficient to create liability under § 1983. For that reason, I find Lambert and Steven Mazzeo are entitled to qualified immunity and I will grant their Motions to Dismiss.

Sollman alleges Weber, the officer who was present when Renninger shot Sollman, is liable

for failing to intervene – either when Renninger entered the gun cleaning room with a loaded weapon or when Renninger shot Sollman. In *Martinez*, the First Circuit held other officers had no obligation to stop a fellow officer's horseplay. *Martinez*, 54 F.3d at 989. In *Morse v. Lower Merion School District*, 132 F.3d 902, 915 (3d Cir.1997), the Third Circuit concluded the "dispositive factor" in state-created danger is "whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable, and not whether the act was more appropriately characterized as an affirmative act or omission." Sollman has not alleged facts which suggest Weber's inaction placed Sollman in a dangerous position; the danger to Sollman existed irrespective of any act or omission of Weber. For that reason, I find Weber entitled to qualified immunity and grant his Motion to Dismiss. I also grant the Motion to Dismiss filed by Former Police Chief John Mazzeo because he is not a state actor for § 1983 purposes since he left the Easton force before Sollman was killed.

The last motion I must consider is the City's Motion under Rule 12(f) to Strike Immaterial, Impertinent, and Scandalous Material. A Court may strike such material on its own or by motion. Fed. R. Civ. P. 12(f)(1). Because I find the material in those paragraphs immaterial to the claims alleged, I will strike Paragraph 34 and Paragraphs 46-57 and direct Sollman to file an Amended Complaint within 20 days.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARIN E. SOLLMAN, Individually and as Administratrix of the Estate of Jesse Sollman : <br><br> v. : <br><br> OFFICER MATTHEW RENNINGER et al. : | CIVIL ACTION <br><br> No.   07-1183 |

### ORDER

And now this 4th day of December, 2008, Defendant Matthew Renninger's Motion to Dismiss (Document 23) is DENIED.  The Motion to Dismiss by Defendants Stuart Gallagher, Phillip B. Mitman, and the City of Easton (Document 12) is DENIED.  The Motion to Strike Impertinent, Immaterial, and Scandalous Material (Document 12) is GRANTED.  It is further ORDERED Plaintiff shall file an Amended Complaint within 20 days of this Order.  The Motion to Dismiss by Defendants Timothy Lambert, Steven Mazzeo, and Robert Weber (Document 23) is GRANTED.  The Motion to Dismiss by John Mazzeo (Document 20) is GRANTED.  Remaining Defendants shall have 20 days after the filing of the Amended Complaint to file an Answer.

BY THE COURT:

_____
Juan R. Sánchez,                    J.